UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| WALEED JARAYSI, INDIVIDUAL YASMINE'S ENTERTAINMENT HALL AND SHADIA'SRESTAURANT, LLC D/B/A JARAYSI'S ENTERTAINMENT HALL AND RESTAURANT, | CIVIL ACTION FILE NO: |
| Plaintiffs, | |
| vs. | |
| CITY OF MARIETTA, GEORGIA, CHARLES C. CLAY AND JOHN DOES I-XXX, | |
| Defendants. | |

## COMPLAINT

**NOW COME** Plaintiffs Waleed Jaraysi ("Mr. Jaraysi"), And Yasmine's Entertainment Hall and Shadia's Restaurant, LLC, d/b/a Jaraysi's Entertainment Hall and Restaurant (collectively, "Jaraysi's") for their Complaint against Defendants, City of Marietta, Georgia ("City"); Charles C. Clay (" Defendant Clay"); and Does I-XXX ("Does") (collectively, "Defendants"), alleging as follows:

1

## PARTIES

1.      During all time pertinent to this Complaint, Plaintiff Waleed Jaraysi was an individual who resided in Cobb County, Georgia.

2.      During all time pertinent to this Complaint, Yasmine's Entertainment Hall and Shadia's Restaurant, LLC was a limited liability company organized under the laws of the State of Georgia.

3.      During all time pertinent to this Complaint, Defendant City of Marietta was a municipal corporation duly organized and conducting governmental activities under the laws of the State of Georgia.

4.      During all time pertinent to this Complaint, Defendant Charles C. Clay was an individual who resided in Cobb County, Georgia.

5.      Defendant Does are individuals whose exact identities are unknown to Jaraysi's at this time.  During all time pertinent to this Complaint, the Does were agents and/or employees of Defendants.   During all time pertinent to this Complaint, the Does acted under color of Georgia state law and in concert with each other, and/or Defendants.   The Does are sued in both their official and individual capacities.  At such time(s) when the identity of any Doe is known to Jaraysi's, Jaraysi's will substitute the real party in interest.

2

6.      During all time pertinent to this Complaint, the City acted under color of Georgia state law.

7.      During all time pertinent to this Complaint, Defendants' conduct as herein alleged was fraudulent, malicious, oppressive, unreasonable, willful, and undertaken in bad faith with reckless disregard for Jaraysi's.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over Jaraysi's Federal claims pursuant to 28 U.S.C. §§1331, 1333, and 42 U.S.C. §1983.

9.      This Court has supplemental jurisdiction over Jaraysi's pendent state law claims pursuant to 28 U.S.C. § 1367 and under the doctrine of pendent jurisdiction as set forth in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S. Ct. 1130 (1966).

10.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) inasmuch as one or more Defendants reside in this district or is subject to personal jurisdiction in this district, and there is no district in which the action may otherwise be brought.

## JURY DEMAND

11.     Jaraysi's hereby demands a trial by jury in this action.

## FACTS COMMON TO THE COUNTS

12.     Mr. Jaraysi is a small business owner in Marietta, Georgia.  He is the owner of Yasmine's Entertainment Hall and Shadia's Restaurant, LLC.

13.     In 2004, Mr. Jaraysi purchased the property commonly known as 555 Commerce Avenue, Marietta, Georgia 30067 (the "Property" at times, the "Premises"), in the hope of developing the abandoned Chili's Restaurant on the Property into a banquet and wedding hall.  Mr. Jaraysi initially named the project "Jaraysi's Entertainment Hall and Shadia's Restaurant, LLC" after his wife.  Mr. Jaraysi subsequently changed the name to "Yasmine's Entertainment Hall, LLC."[1]

14.     On or about December 28, 2004, Mr. Jaraysi applied for and was issued a building permit to modify and build an addition over an existing building on the Premises (permit number 04-1901, the "Permit").  The project was mixed use featuring a restaurant and banquet/wedding hall.

15.     Although the Permit requested authorization for the construction of an 8,700 square foot addition, the attendant construction plans contemplated a three

---

[1]     Approximately two years into the project, the City required Mr. Jaraysi to convert the Premises to an office building.  Rather than lose his investment, Mr. Jaraysi agreed to this change and the project was renamed, "Nazareth Office Building."

story structure in excess of 23,000 square feet.   The City was aware of this discrepancy.

16.   Construction was approved and commenced in April 2005.

17.   In or about August 2005, Defendant Clay contacted Mr. Jaraysi and inquired about purchasing the Property.   Mr. Jaraysi was not interested in selling the Property.

18.   Shortly after Defendant Clay spoke to Mr. Jaraysi, a representative of Brock Clay Government and Public Affairs sent a series of correspondence to the City of Marietta regarding Jaraysi's intended use of the Property and the square footage discrepancy.

19.   The City promised to follow-up on the Brock Clay inquiry.   Internal emails acknowledge the City was aware of the square footage discrepancy.

20.   The City requested further plans from Jaraysi's.   These were provided on August, 16, 2005.

21.   Over the course of the next few months, an issue regarding the required number of parking spaces arose.

22.   The City informed Jaraysi's that it would need to request a variance regarding the parking space requirements.

23.   Jaraysi's requested the variance as instructed.

5

24.    Brock Clay Government and Public Affairs opposed this request by submitting a letter of objection to the City on October 24, 2005.

25.    That same day, the City denied Jaraysi's request for variance.

26.    Mr. Jaraysi continued to meet with City officials and identified the intended usage of the upper levels of the Property; however, Brock Clay Government and Public Affairs continued to meddle with the Jaraysi's project.

27.    On or about December 12, 2005, Defendant Clay contacted Mr. Jaraysi once more to purchase the Property. Once again, Mr. Jaraysi stated he did not wish to sell the Property. Defendant Clay became upset and then made a series of express and implied threats to Mr. Jaraysi, including the following:

- He would acquire the Property one way or another.

- Nobody says no to him.

- Mr. Jaraysi would be sorry.

- He previously the head of the "commission" and a Senatorial candidate.

28.     The very next day, the City issued Jaraysi's a stop work order regarding construction on the Premises due to "non-compliance" with City ordinances.

29.    Mr. Jaraysi met with City officials during the next few days, and, in

apparent resolution, the City issued Jaraysi's a temporary release of the stop work order.

30.    Jaraysi's agreed to reduce the size of the building on the Premises from 24,993 square feet to 20,145 square feet.

31.    On December 16, 2005, the City generated an internal memorandum which reaffirmed the parties' agreement and understanding regarding completion of the Premises.  The memorandum provides that the two remaining issues: (1) the width of a landscape strip, and (2) the minimum setback, were minor and could be resolved through an administrative variance.

32.    On or about December 22, 2005, Defendant Clay sent correspondence to the City which included a purported objection letter from a neighbor who identified "defects" in Jaraysi's existing site plan. The purported "defects" regarded matters already resolved between Jaraysi's and the City.

33.    Nonetheless, in January 2006, the City reinstated its previous stop work order and issued Jaraysi's a notice to cease and desist from further work.

34.    Again, Mr. Jaraysi met with City officials to resolve any outstanding issues.

35.    Jaraysi's appealed the notice to cease and desist, the City denied this appeal.

36.    In March 2006, Jaraysi's submitted a new permit application. However, continued delays and "issues" raised by the City prevented the project from moving forward.

37.    After delaying and impeding Jaraysi's progress for nearly two years, the City brought a Petition and Notification of Request for Demolition in the Municipal Court of Marietta, Case No. 07-TR-03257 (the "Demolition Suit") in 2007.

38.    The City sought to have the partially-constructed building declared an unsafe building/structure pursuant to the City's nuisance ordinance, City Code of Marietta Section 10-8-60, as permitted by O.C.G.A. Section 41-2-5 *et seq.*, even though the building was structurally sound and did not pose a risk or nuisance.

39.    At the time, there were multiple abandoned projects within a few miles of the Property which did constitute unsafe structures. The City took no action against the owners of these properties and instead singled out Jaraysi's.

40.    The trial court granted an Order of Demolition (the "Demolition Order").

41.    Jaraysi's appealed the Demolition Order to the Superior Court of Cobb County ("Demolition Appeal") and the Superior Court dismissed the appeal.

42.    Jaraysi's appealed to the State of Georgia Court of Appeals and the

Court reversed the Superior Court dismissal in Yasmine*'s Entertainment Hall et al. v. City of Marietta*, 292 Ga. App. 114 (2008).

43.   On remand, the parties entered into mediation.

44.   In a display of good faith and attempt to minimize the losses from the substantial cost Jaraysi's had incurred to date improving the building, Jaraysi's agreed to convert the partially constructed banquet hall into an office building.

45.   The City then presented Jaraysi's with a Settlement, Release, Covenant Not to Sue, and Dismissal Agreement dated February 19, 2009 (the "Settlement Agreement").   In exchange for a release and covenant not to sue, the City promised to rezone the Property and provide Jaraysi's (15) months to complete construction.

46.   After obtaining a release from Jaraysi's, the City issued Jaraysi's a new "task list" requesting, *inter alia*, and for the first time, that Jaraysi's conduct an environmental study on the Property.

47.   This request, coupled with the remainder of the "task list" new effectively ensured that Jaraysi's would not be able to resume construction in accordance with the Settlement Agreement, thereby denying Jaraysi's the intended, essential benefit contemplated by the Settlement Agreement.

48.   On May 4, 2010, the City filed a Motion to Enforce Settlement.

49.    In an apparent display of "good faith", the City offered to "extend" the deadline to complete construction by presenting Jaraysi's with a Consent Order dated May 25, 2010.

50.    The Consent Order bound Jaraysi's to recommence construction within one month by June 25, 2010 and to complete construction by November 29, 2010.   Otherwise, the City could enter the Premises to demolish the building without the need for court approval.

51.    Under the Consent Order, the City reserved the sole discretion to review and approve or reject all plans, drawings, specifications, and other documents Jaraysi's needed to commence construction even though time was of the essence because of the one month deadline.

52.    Jaraysi's recommenced construction by clearing the site, gutting old insulation and wood, accepting delivery of construction materials, and entering into various contractual commitments to complete construction.   However, Jaraysi's was unable to procure a building permit within the one-month timeframe because the City unreasonably withheld this.  Mr. Jaraysi's repeated attempts to meet with City officials and to obtain the necessary permits were denied.  Multiple phone calls and inquiries by Mr. Jaraysi were outright ignored.

53.    On one occasion, Mr. Jaraysi was informed that the City would not

issue Jaraysi's a building permit until he met with building department official Hal Cosper. When Mr. Jaraysi attempted to schedule a meeting with Mr. Cosper, he was advised that Mr. Cosper was "unavailable" until June 28, 2010. When Mr. Jaraysi finally met with Mr. Cosper, he was informed the City would not issue a building permit because the June 25, 2010 deadline had lapsed.

54.     Consequently, the City declared its intent to enter the Premises to demolish the building on the basis that Mr. Jaraysi failed to commence construction activities by June 25, 2010.

55.     On July 16, 2010, the City Council appropriated funds to begin demolition.

56.     The City issued a press release declaring that the "eyesore" would be demolished.[2]

57.     Mr. Jaraysi's appeal to the City Council was ignored.

58.     Jaraysi's subsequently commenced an emergency proceeding in the Cobb County Superior Court to halt/prevent demolition. Two days later the City counterclaimed and sought an injunction to prevent Mr. Jaraysi from interfering with the demolition.

---

[2]     The Jaraysi's project was previously described as resembling a "bombed out Baghdad" Mr. Jaraysi was repeatedly dubbed a "nightclub owner" even though he does not own or operate any nightclubs.

59.     Five hours later, the Superior Court issued a Rule Nisi on the City's counterclaim and motion for injunctive relief.

60.     On July 26, 2010, the Court entered an Order denying Mr. Jaraysi's Motion, and a separate Order enjoining Mr. Jaraysi from interfering with the City's demolition.

61.     Jaraysi's subsequent appeals to the Georgia Court of Appeals and the Georgia Supreme Court were summarily denied.

62.     Mr. Jaraysi, who owns similar property directly across the street, is now witness to the gradual demolition of his multimillion dollar investment.

### CAUSES OF ACTION

### COUNT ONE
### 42 U.S.C. §1983
### -DUE PROCESS/WRONGFUL LAND USE REGULATION-
(City; Does)

63.     Jaraysi's incorporates, re-alleges, and adopts by reference paragraphs 1-62 as though fully set forth herein.

64.     The City unreasonably delayed, hindered, and prevented Mr. Jaraysi from completing construction of the Premises.

65.     The City withheld unreasonably and in bad faith withheld one or more of the requisite approvals and permits Mr. Jaraysi needed to complete construction.

66.     The City unreasonably and in bad faith brought a nuisance action

against Jaraysi's which lacked merit.

67.    The City induced Jaraysi's to enter into successive agreements purporting to resolve the construction related issues and subsequently performed and/or exercised discretion dishonestly and in bad faith.

68.    The City's conduct as herein alleged was arbitrary, capricious, unreasonable, and caused Jaraysi's damages.

69.    As a direct and proximate consequence of this conduct, the City denied Mr. Jaraysi due process of law.

70.    As a direct and proximate consequence of this conduct, the City deprived Mr. Jaraysi of his property.

## COUNT TWO
## -FRAUDULENT MISREPRESENTATION-
(City)

71.    Jaraysi's incorporates, re-alleges, and adopts by reference paragraphs 1-70 as though fully set forth herein.

72.    The City made one or more material representations to Jaraysi's including a promise to rezone the Property and a promise to review, approve, or deny all necessary permits in the "normal course of review."

73.    The City's material representations were intended to and did induce Jaraysi's to enter into the Settlement Agreement and subsequently, the Consent

13

Order.

74.   Jaraysi's reliance was justified.

75.   At the time of making the foregoing material representations, the City did not intend to honor them and secretly intended to deliberately, unreasonably, and in bad faith delay, hinder, and prevent Jaraysi's from completing construction on the Premises.

76.   The City in fact deliberately, unreasonably and in bad faith delayed, hindered, and prevented Jaraysi's from completing construction.

77.   As a direct and proximate result of this fraud, Jaraysi's has suffered damages including the destruction of its partially constructed building.

## COUNT THREE
## -BREACH OF CONTRACT-
(City)

78.   Jaraysi's incorporate, re-allege, and adopt by reference paragraphs 1-77 as though fully set forth herein.

79.   Jaraysi's entered into successive agreements with the City regarding completion of the building on the Premises; the Settlement Agreement and the Consent Order, respectively.

80.   In each Agreement, the City reserved the sole discretion to review and approve or reject all plans, drawings, specifications, and other documents in the

14

"normal course of review regarding Jaraysi's application for the permits to complete construction."

81.    The City performed its duties and exercised its self-reserved discretion under the both Agreements dishonestly and in bad faith, thereby directly breaching each Agreement.

82.    As a direct and proximate consequence of the City's breach of both the Settlement Agreement and the Consent Order, Jaraysi's has suffered damages.

## COUNT FOUR
## –CONSPIRACY–
(City; Defendant Clay; Does)

83.    Jaraysi's incorporates, re-alleges, and adopts by reference paragraphs 1-82 as though fully set forth herein.

84.    Defendant Clay acted in concert with the City and one or more of its officials pursuant to a common design to delay, hinder, and prevent Jaraysi's from completing construction on the Premises.

85.    Specifically, Defendant Clay directed a series of correspondences to the City intended to delay, hinder, and prevent Jaraysi's from completing construction.    Further, Defendant Clay met with one or more City officials to determine how to terminate the Jaraysi's project.

86.    On or about December 12, 2005, Defendant Clay personally telephoned Mr. Jaraysi to inquire about purchasing the Property.  When Mr. Jaraysi declined interest in selling, Defendant Clay insisted Mr. Jaraysi would sell the Property, implying an ability to influence decision making on the basis of his previous professional appointments and relationship with the City.

87.    The very next day December 13, 2005, the City issued Jaraysi's a stop work order.

88.    Defendant Clay has since advised one or more persons of his intent to purchase the Jaraysi property including.

89.    As a direct and proximate consequence of Defendant Clay's concerted action with the City, Jaraysi's has been unreasonably and wrongfully been delayed, hindered, and prevented from completing construction of the building on the Premises.

90.    As a further direct and proximate consequence of Defendant Clay's concerted action with the City, the City has demolished Jaraysi's building.

### COUNT SIX
### -TORTIOUS INTERFERENCE WITH CONTRACT-
(Defendant Clay; Does)

91.    Jaraysi's incorporates, re-alleges, and adopts by reference paragraphs 1-90 as though fully set forth herein.

16

92.   Defendant Clay was not party to the Settlement Agreement or the Consent Order.

93.   Defendant Clay was an "intermeddler" acting without privilege insofar as he sought to destroy the value of Jaraysi's investment for his personal gain.

94.   As a direct and proximate consequence of Defendant Clay's tortious interference with Jaraysi's contracts with the City, Jaraysi's has suffered damages.

### COUNT SIX
### -TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP-
(Defendant Clay; Does)

95.   Jaraysi's incorporates, re-alleges, and adopts by reference paragraphs 1-95 as though fully set forth herein.

96.   Defendant Clay was an "intermeddler" acting without privilege insofar as he sought to destroy the value of Jaraysi's investment for his personal gain.

97.   As a direct and proximate consequence of Defendant Clay's tortious interference with Jaraysi's business relationship, Jaraysi's has suffered damages.

### PRAYER FOR RELIEF

**WHEREFORE,** Jaraysi's prays for judgment against Defendants as follows:

1.    General economic damages;

2.    Consequential damages including, loss of earnings/income; impaired earning capacity; and goodwill impairment;

3.    Past and future mental and emotional distress;

4.    Punitive and/or exemplary damages;

5.    Costs of suit incurred herein to the extent permitted by law;

6.    Pre-and post-judgment interest as provided by law;

7.    Reasonable and necessary attorneys' fees; and

8.    Such other and further relief as the Court may deem just and proper.

RESPECTFULLY SUBMITTED THIS _____ DAY OF JUNE 2012,


                                              *s/ Nelson O. Tyrone*
                                              Nelson O. Tyrone, III
                                              Tyrone Law Firm, P.C.
                                              1201 Peachtree Street N.E.
                                              400 Colony Square
                                              Atlanta, GA 30361
                                              Phone 404-377-0017
                                              Fax 404-249-6764
                                              Email: ntyrone@tyronelaw.com